## AMERICAN SUGAR-REFINING CO. v. MADDOCK.

(Circuit Court of Appeals, First Circuit. May 12, 1899.)

### No. 279.

SHIPPING—LIABILITY OF CARRIER FOR SHORTAGE IN CARGO—EFFECT OF BILL OF LADING SIGNED BY MASTER.

The rule that the master of a vessel has no authority by virtue of his position, either actual or apparent, to sign a bill of lading for cargo not actually received on board, applies when there is only a deficiency in part through mistake, and the owner cannot be held liable, either by the original consignee or an indorsee of the bill of lading, for such a shortage, where the quantity actually received is delivered.

Appeal from the District Court of the United States for the District of Massachusetts.

Charles T. Russell and Arthur H. Russell, for appellant.

Eugene P. Carver (Edward E. Blodgett, on brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. In this case, the American Sugar-Refining Company purchased, in Cuba, a quantity of sugar in bags, and paid in full therefor. The parties of whom it purchased shipped the sugar by the steamer Salamanca, and took a bill of lading for a precise number of bags named, which also gave the weight. The bill of lading contained also the following words: "Weight and contents unknown." It acknowledged that the sugar was shipped by the parties of whom the cargo was purchased, and it ran in favor of the American Sugar-Refining Company and its assigns, deliverable at Boston. It is admitted that the steamer delivered all the sugar which she received, but the delivery was short of the bill of lading 37 bags. There was no claim that there was any shortage in weight. The American Sugar-Refining Company claims to be allowed the value of 37 bags, estimated at the average weight per bag of the whole cargo, and this is the issue in the case. The proceeding below was by a libel in personam in the district court, and the decision was in favor of the owner of the vessel. 91 Fed. 166.

In The Freeman, 18 How. 182, it was held that neither a vessel nor her owners were liable in that case in favor of a bona fide holder of a bill of lading, it having been shown that none of the goods called for by it were shipped. The American Sugar-Refining Company, however, maintains that there is a substantial distinction between a case where a bill of lading is issued fraudulently, or where no merchandise called for by it was in fact shipped, and the case at bar, where it is claimed that the master erred innocently in his count, and there is only a small shortage in what the shipping documents call for. It is not denied that, as towards an

original holder of a bill of lading, it stands as a mere receipt, so far as the amount of merchandise called for by it is concerned, and is therefore subject to explanation; but it is claimed that in the present case the American Sugar-Refining Company stands in the position of an innocent indorsee of a bill of lading for value, and that the vessel is therefore estopped so far as concerns the shortage. The American Sugar-Refining Company is not in form an indorsee, and it does not appear distinctly that it made payment to its correspondents in Cuba on the faith of the bill of lading; and it may well be, in any event, that it should deal for the shortage with the parties of whom it purchased the sugar and who shipped it, and not with the vessel. However, the case has been submitted by both parties on the theory that the American Sugar-Refining Company stands in the position of an innocent indorsee for value.

With reference to the distinction attempted to be made by the American Sugar-Refining Company, none of the authorities relied on by it sustain it, except the local decisions of the state courts of New York. With those exceptions, the entire weight of authority which ought to influence us, recognizes no distinction, and we perceive no principle of law which should require them to do so. The Freeman, already referred to, treats of this question. At page 191, the opinion says that the master has no more an apparent unlimited authority to sign bills of lading than he has to sign bills of sale of the vessel. It says he has an apparent authority, if the ship be a general one, to sign bills of lading for cargo actually shipped, but his act does not bind the owner, even in favor of an innocent purchaser, if the facts on which his power depends do not exist; and the court adds: "It is incumbent upon those who are about to change their condition upon the faith of his authority to ascertain the existence of all the facts upon which his authority depends." It also says it takes the law to be now settled by several cases cited, among the rest Grant v. Norway, 10 C. B. 665, thus approving that decision.

Grant v. Norway (decided in 1851) is a case of very great authority, having been heard in the common pleas by Chief Justice Jervis, Justice Cresswell, and Justice Williams. At page 688 the opinion says that the court cannot discover any ground on which a party, taking a bill of lading by indorsement, would be justified in assuming that the master had authority to sign such bills whether the goods were on board or not. It also states that it is generally known that the master derives no such authority from his position as master, so that the case may be considered as if the party taking the bill had notice of an express limitation of his authority. On page 689 it says:

"So here the general usage gives notice to all people that the authority of the captain to give bills of lading is limited to such goods as have been put on board; and the party taking the bill of lading, either originally or by indorsement, for goods which have never been put on board, is bound to show some particular authority given to the master to sign it."

Another leading case is McLean v. Fleming, L. R. 2 H. L. Sc. 128, decided in 1871. The facts were almost like the case at bar, in that the bill of lading was taken out by the persons from whom the merchandise was purchased, running to the purchaser. It covered a

cargo of cattle bones. There was a nominal shortage of 210 tons, and the cases already cited were applied; the lord chancellor stating, at page 130, that the master has no authority to sign bills of lading for a greater quantity of goods than actually put on board. Grant v. Norway and McLean v. Fleming are usually cited in England wherever this question is referred to. The latter case especially is like the one at bar, not only in the circumstances already stated, but also in that no fraud on the part of the master was alleged. In Cox v. Bruce, 18 Q. B. Div. 147 (decided by the court of appeal in 1886), the same rule was given as to an indorsee of a bill of lading; Lord Esher, M. R., stating, at page 152, the effect of the decision in Grant v. Norway to be, not merely that the captain has no authority to sign a bill of lading in respect of goods not on board, but that the nature and limitations of his authority are well known among mercantile persons. Carv. Carr. by Sea (2d Ed.; 1891), in section 69, states the rule as follows: "This description and statement of quantity are evidence against the shipowner that goods of that kind and amount have been shipped. But they are not conclusive. He may show that they are incorrect, whether the claim be by consignees on whose account the shipment was made or by indorsees of the bill of lading." It is also added: "And this does not depend upon words of reservation, such as 'weight and contents unknown,' being inserted in the bill of lading." This last expression shows, if it was necessary to show it, that the presence of like words in the bill of lading in suit does not affect the case. Abb. Shipp. (13th Ed.; 1892), at page 368, states the same general rule, and adds, even as against an indorsee for value: "If the quantity of goods shipped is uncertain, the master cannot bind his owners by acknowledging receipt of a specific quantity of goods." McLean v. Fleming is cited in support of this proposition. Macl. Shipp. (4th Ed.; 1892), lays down the same general rule in broad terms, citing McLean v. Fleming and Grant v. Norway, without making any distinction between fraud and mistake on the part of the master, or between cases where there is no shipment or only a partial shipment.

Among the cases cited by the American Sugar-Refining Company, we need notice only Shepherd v. Naylor, 5 Gray, 591, Sears v. Wingate, 3 Allen, 103, and 1 Pars. Shipp. & Adm., at page 190, where these cases are referred to. These authorities discuss the power of a master to bind the owners by statements in bills of lading as to the rate of freight and certain other matters, and also discuss under what circumstances the master himself may be liable for an excess statement in a bill of the amount shipped, but, on the question before us, they weigh against the American Sugar-Refining Company instead of for it. Other citations relied on are mere dicta, uncertain in expression, and of no weight as against the mass of authorities to which we have referred. The libel was filed in the court below to recover a balance of freight against which the American Sugar-Refining Company sought to recoup the shortage which we have stated. The decree below was in favor of the vessel, and it should be affirmed. The decree of the district court is affirmed, with interest, and the costs of appeal are awarded to the appellee.